DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1864.

JONAS LIVERMORE ET AL. v. THE BOARD OF CHOSEN FREE-
HOLDERS OF THE COUNTY OF CAMDEN.

1. An action will not lie in behalf of an individual who has sustained
   special damage by reason of the neglect of a public corporation to
   perform a public duty.
2. The 26th section of the act concerning roads, taken in connection
   with its preamble, as found in *Paterson's L.* 326, was not intended for
   the benefit of mill owners, but for the protection and security of pub-
   lic travel.
3. In the 21st section of the supplement to the act concerning roads,
   passed in 1859, *Pamph. L., p.* 626, providing " that if any damage shall
   happen to any person or persons, his, her, or their team, carriage, *or
   other property*, by means of the insufficiency or want of repair of any
   bridge upon any public road, &c., such person shall have his action,"
   &c. the words " other property " do not embrace lands and fixtures.

In case.

The declaration in this case stated that a mill-dam, of
which the plaintiffs were the owners, had been erected, in
connection with a bridge over the race and flood-gates ; that
afterwards a public road was laid over this dam across the

507

said race and flood-gates, whereby it became the duty of the defendants, by force of the statute, to maintain said bridge, which they neglected to do, and in consequence thereof the bridge fell down and injured the dam and gates so that the water escaped, &c.

The case came before the Supreme Court on a demurrer to this declaration. See case reported, 5 *Dutcher* 245.

For plaintiffs in error, *T. P. Carpenter* and *A. Browning*.

For defendants, *G. M. Robeson*.

BEASLEY, CHIEF JUSTICE.    That an action will not lie in behalf of an individual who has sustained special damage by reason of the neglect of a public corporation to perform a public duty, I consider the settled law of this state. This was the doctrine approved of by the Supreme Court, after much research, and a careful consideration of the authorities in the case of *Strader* v. *The Board of Freeholders of Sussex*, 3 *Harr.* 108, and the same principle was reaffirmed in the case of *Cooley* v. *Freeholders of Essex*, 3 *Dutcher* 415. These decisions, in my judgment, rest upon the solid foundations of ancient precedent and public policy.

But it was insisted by the counsel of the plaintiffs in error that the case now under review does not fall within the class of actions above referred to. It was urged that this suit is grounded on the twenty-sixth section of the act concerning roads, *Nix. Dig.* 743,* and that thereby a *private* duty in favor of the plaintiffs was imposed on the defendants. The argument was to the effect that this clause was remedial; that the mischief to be remedied was the appropriation of the dams of mills to public purposes without making compensation, and that it was the design of the legislature to recompense the proprietor, by imposing upon the public the obligation of maintaining the bridges over the dams so taken for general use. It was contended, as a legal inference, that as the duty of maintaining the dam in question was due from

* *Rev., p.* 1004, § 43.

the defendants to the plaintiffs as individuals, an action was sustainable.

Admitting the rule of law thus involved, the question is presented whether or not the premises are true to which, in this instance, it is applied. Was the section of the statute in question designed to relieve the mill owner from the supposed hardship of having a part of his mill property taken without compensation?

After a careful consideration of the subject in the light of the able arguments of the counsel in the cause, I have come to the conclusion that such was not the design of the legislature.

The clause of the road act above referred to was read and commented upon before this court, as it appears at present in the Digest; but by referring to it as it originally stood, it will be found that the section was prefaced with a statement explanatory of the purpose in view. This preamble is in the following words: "And whereas, the roads and bridges over or near dams and races of mills and iron works are too often neglected, and the water wheels are suffered to lie open and be exposed, to the great terror, danger, and annoyance of travellers; for the prevention whereof in future, be it enacted," &c. *Paterson's L.* 326. Here, then, is an explicit statement of the evils to be remedied, but the supposed injustice done to the mill owner is not one of those enumerated. The clause is declared to be remedial of public inconveniences. The express purpose is to prevent the terror, danger, and annoyance, not to the mill owner, but to travellers, arising from the neglect of the roads and bridges over dams and iron works, and the open exposure of the water wheels. This preamble implies that it was common for public roads to be laid over mill-dams, and yet no reference is made to the imagined wrongs of the mill owner. So clear an exposition of the design of the law makers can be overcome, only by an indication plainly appearing, or necessarily to be inferred from the body of the act. But in point of fact no such indication appears. The body of the clause

simply provides apt remedies for the evils enumerated in the preamble. The language is, "that all roads laid out or to be laid out near to or across dams for mills or iron works shall be kept in good repair, and the bridges over the races and flood-gates shall be substantially built, repaired, amended, kept in good order, and railed in on each side, the rails to be at least three feet high, and the whole rendered easy, convenient, and safe for the passing of travellers, horses, carriages, and cattle; and the wheels of such mills and iron works shall be entirely covered in and hid, &c., so as effectually to secure persons, horses, cattle and carriages in passing the same."

It is obvious that each of these provisions carries into effect the purpose expressed in the preamble. It is the bridges and roads, and not the dam, which are to be kept up. These are to be made "safe," not for the benefit of the mill owner, but, in the language of the act, "so as effectually to secure persons, horses, cattle, and carriages in passing the same." The interest which the owner of the mill may have in the keeping up and proper reparation of the bridges, is nowhere alluded to in the act; all its provisions point to the security of public travel. The whole clause presents the semblance of an ordinary municipal regulation, having for its end the welfare, not of individuals, but of the people at large.

The principal, if not the only consideration urged on the argument, to induce a construction of the act contrary to the one above given, was the evident injustice, as it was alleged, which otherwise would be done to the owners of mills. It was pressed with much earnestness upon the court, that in those cases in which the mill owner had already converted his dam into a private road, with the necessary bridge over the raceway, that it was unjust that these improvements should be taken for a public road, without an obligation being imposed upon the public to maintain the improvements in favor of their owner. If the injustice of such proceeding be admitted, it can have but little effect upon this case. The burthen is upon the plaintiffs to show that, in point of fact.

the act in question has enjoined upon the defendants a duty in their favor. To manifest that without such provision the act is unjust, is not sufficient. Such evil consequence, of course, should have its weight in the construction of the law ; but as a criterion it is not of much importance, when, as in this case, the legislative will is clearly manifest. But what is the injustice which is to result ? It is said the improvements of the mill owner will be taken without compensation. But this is not so. The laws of this state have never authorized the taking of anything but land for public roads. A bridge or its materials could not be taken for the construction of the public road. It is true that the dam, being land, may be sequestered for public use as an highway ; but this does not seem to be a greater hardship than generally accompanies the appropriation of lands, under ordinary circumstances, to the same purposes. In truth, in most cases it would appear that the road laid by the public on the dam, would be a burthen which would not press very heavily upon the land owner. His interest and that of the public harmonize. The owner would desire to preserve the structure as a dam ; it is the interest of the public to maintain it as a road—and it becomes thus the care of both. Generally, too, the road thus located over the dam affords the best means of access to the mill, and the expense of this convenience is to be defrayed out of the public purse. It is difficult to imagine a case in which the owner of the mill will be subjected, by such appropriation of his property, to evils of any great magnitude.

I do not, therefore, think that the rule of statutory construction which requires the court to avoid, if practicable, an interpretation leading to an unjust result, can be applied, with any force, to this case.

Another ground upon which this action was sought to be sustained was suggested on the argument.

It was said the suit was authorized by the express terms of the twenty-first section of the supplement to the act concerning roads, passed in 1859. *Pamph. L., p.* 626. This

section provides, " that if any damage shall happen to any person or persons, his, her, or their team, carriage, or other property, by means of the insufficiency or want of repair of any bridge upon any public road," &c., such person shall have his action. It was insisted that land and fixtures were embraced under the general words " other property." But such latitude in the application of these terms cannot be justified by any principle of construction. General terms, following a specification of things of a particular class, must be understood to refer to things of the same class, or at least of the same general character. The rule, as clearly established, is thus laid down : " Where general words follow particular words, the rule is to construe the former as applicable to the things or persons particularly mentioned." Sedg. on Stat. Const. 423 ; Sandiman v. Breach, 7 B. & C. 100. The provision of the clause above cited, was evidently intended to apply to persons and animals passing and property being carried over bridges ; the particular terms used relate to that subject, and the general terms must be restricted so as not to embrace a subject of an entirely different character.

In my opinion the judgment of the Supreme Court should be affirmed.

For affirmance—BEASLEY, C. J., CLEMENTS, CORNELISON, ELMER, FORT, GREEN, CH., HAINES, OGDEN, VAN DYKE, WALES.    10.

For reversal—KENNEDY.    1.