BARBARA L. MORRIS, ADMINISTRATRIX OF THE ESTATE OF JAMES R. MORRIS, DEC'D., AND AS ADMINISTRATRIX AD PROSEQUENDUM OF JAMES R. MORRIS AND HIS NEXT OF KIN, AND INDIVIDUALLY, PLAINTIFF-APPELLANT, v. TOWNSHIP OF CLINTON, COUNTY OF HUNTERDON, STATE OF NEW JERSEY, THEIR AGENTS, SERVANTS AND EMPLOYEES, AND THREE JOHN OR JANE DOES (FICTITIOUS NAMES), DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division .

Argued February 8, 1988—Decided March 16, 1988.

Before Judges O'BRIEN and STERN.

*Richard C. Swarbrick* argued the cause for appellant (*Arthur S.A. Pataky,* attorney).

*Cynthia Goldman* argued the cause for respondent County of Hunterdon (*Voorhees & Stein,* attorneys; *Cynthia Goldman,* on the brief).

*Michael Furda,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Michael Furda,* on the brief).

PER CURIAM.

Plaintiff appeals from summary judgments in favor of defendants County of Hunterdon (County) and State of New

Jersey (State).[1] We affirm as to the State, but reverse and remand as to the County.

Plaintiff's decedent James R. Morris was killed on July 3, 1983 when thrown off his motorcycle on Route 629 in the Township of Clinton (Township). On that day, decedent, his brother Kenneth R. Morris, Jr. (Kenneth), and two other friends were riding their motorcycles along Route 629 in a westerly direction, when they rounded a curve to proceed in a northerly direction. According to an affidavit from Kenneth, the roadway was slippery with actual streaks of oil seen. As the road approached the curve there were no signs warning as to speed or as to the curve. Kenneth was riding approximately 200 to 300 feet behind his brother, the decedent, when Kenneth began to slide and almost lost control of his motorcycle, regaining control in the area where his brother began to skid. As he rounded the curve Kenneth saw his brother lying on the shoulder in front of the guard rail. The guard rail ran along the westerly sideline of Route 629, with a gap for what appears on a photograph to be a gate entrance. The guard rail consists of posts with cable attached. As depicted in the photographs the cable is affixed to the posts with a round metal bar with a nut screwed on. Kenneth came upon his brother lying face down at the beginning of the guard rail. There was a large hole in his back and he was bleeding profusely. Kenneth observed blood and chunks of flesh on the threaded rod sticking out horizontally about five inches from the beginning of the guard rail upon which decedent had been impaled. The autopsy revealed among the fatal injuries the avulsion of the heart with exsanguination. There was a deep gaping posterior wound in his back.

Plaintiff instituted a wrongful death action against the Township, the County and the State. On September 16, 1986, sum-

---

[1]Summary judgment was also granted in favor defendant Township of Clinton from which no appeal was taken.

mary judgment was entered in favor of the Township. Because of plaintiff's failure to appear at the calendar call on December 15, 1986, the complaint was dismissed on January 5, 1987, but was restored to the active trial list on March 13, 1987. After oral argument on April 10, 1987, summary judgment was entered in favor of the County on April 13, 1987. The State's motion for summary judgment was carried and finally argued on May 8, 1987, at which time plaintiff's motion for a rehearing of the summary judgment in favor of the County and other relief was also heard and denied. Summary judgment in favor of the State was entered on May 11, 1987. The order included a denial of plaintiff's application for rehearing of the summary judgment in favor of the County.

The motion judge based summary judgment in favor of the State on the statute of limitations, *N.J.S.A.* 2A:14–1.1, which provides in pertinent part:

> No action ... in tort ... to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property ... or for ... wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

According to a certification of Melvin H. Meyers, Business Administrator for the New Jersey Water Supply Authority, the road and guard rail were built under the auspices of the former Department of Conservation and Economic Development, with construction completed in 1965. Chester J. Andres, Executive Assistant to the Assistant Commissioner for Engineering and Operation in the Department of Transportation, certified that the Department of Transportation has never been responsible for the supervision, maintenance, construction, repair or control of the roadway or guard rail at Hunterdon County Route 629 in Clinton Township, including milepost 13.6 where the accident occurred. The State submitted a copy of a deed from the State,

dated October 13, 1964, conveying the property in question to the County. This deed contains the following language:

IN FURTHER CONSIDERATION of this conveyance and in accordance with the terms and conditions of Contract D.C. No. 39, the County agrees to maintain and operate that portion of the relocated road, pavement, shoulders and guard rails running across the top of the Round Valley Dike between Station 139+00 and 165+00 in the manner prescribed by Law, and to save harmless and forever release the State from any and all obligations and duties for the maintenance and operation of said portion of the relocated road, including that portion as specified above located running across the top of the aforesaid dike, provided, however, that the State is to be responsible for the maintenance and repair of the slope of the road and dike embankment between Stations 139+00 and 165+00, and for repair and/or reconstruction of the road in the event that the same is damaged by a washout or other failure of the road and/or dike embankment between Station 139+00 and 165+00.

This conveyance is made subject to the rights of the State to enter upon Lands of the County at points whereon the Round Valley Reservoir fence may be situate for the sole purpose of the repair, maintenance and/or replacement of such fence, this being the sole responsibility of the State.

### GENERAL PROVISION

It is understood and agreed by both the State and the County that upon acceptance of this Deed by the County, all responsibility for the maintenance and operation of said portion of the relocated road herein conveyed shall be and is hereby assumed by the County, its successors and assigns subject to such provisions to the contrary specifically heretofore set forth, and the County shall save harmless and forever release the State from any and all obligations and duties for the maintenance and operation thereof, including drainage damage on lands not owned by the State.

The contention by the State that construction of the roadway and guard rail was completed in 1965 and the provisions of the deed wherein the County assumed responsibility for the maintenance and operation of the road, pavement, shoulders and guard rails was not contradicted by any certifications from the plaintiff or the County.

Although he observed that he had not seen the limitation provided in *N.J.S.A.* 2A:14-1.1 applied before in the context of this type case, the motion judge concluded it was indeed applicable, citing *Richards v. Union Building & Construction Corp.*, 130 *N.J.Super.* 127 (App.Div.1974), where the statute

was applied to a claim against a contractor involving a portion of a highway which the contractor had constructed for the Department of Transportation. We also see no reason why the statute should not be available to the State. Furthermore, we note that the evidence is clear that, by the Deed in 1964, ownership of the roadway in question including the guard rail was vested in the County which undertook to control and maintain it. Thus, at the time of the accident the property was neither owned by nor under the control of the State within the concept of *N.J.S.A.* 59:4–2 as "its property." The summary judgment in favor of the State is affirmed.

■ In her answers to interrogatories, plaintiff described the condition of the roadway as slippery due to oil on the surface and that there was a traffic sign which did not have a speed on it. In her more specific answers to interrogatories # 34 and # 35, plaintiff said:

34. Subject to expert opinion—Township of Clinton maintained improperly constructed designed, maintained, controlled, supervised, negligent roadway. Failed to properly erect warning signs, failed to maintain roadway such that oil slick was allowed to remain on roadway causing vehicles to go out of control; failed to properly guard motorists against hazards of roadway including but not limited to allowing obstruction from guard rail and guide wires to protrude into atmosphere such that they caused decedent to become impaled upon same.

35. Plaintiff makes same allegations against all parties including County of Hunterdon, State of New Jersey and/or independent contractors who constructed, maintained and/or supervised roadway and signs.

By letter of February 17, 1987, plaintiff's counsel submitted the expert's report of Eugene Amron, P.E. and L.S. with Dayton Engineering, to counsel for the County and State. Amron noted that he had visited the site, seen the police report and sketch, as well as five photographs, and then said:

DISCUSSION:

It appears that at the time of the accident there was no speed sign. The protruding guard-rail bolt is definitely negligence and the responsibility of the County as it is a County road (Rt. 629). I do not know whether the road was built and maintained by the County or the DEP. However, the type of construction, 1.e [*sic* ] oil and stone chips, invites hydroplaning on a hot summer

July day. The surface appears to a layman as pavement, but an engineer knows the danger inherent in the fact that this type of road "cooks" on a hot summer day causing the oil to come out, making it a very slippery surface.

CONCLUSION:

Any one of the three causes is dangerous and negligent, but the combination was fatal.

1. the missing sign;

2. the protruding bolt;

3. the oil and stone chip road on a hot day.

In granting the County's motion for summary judgment, the trial judge labeled Mr. Amron's opinion a "net opinion." In *Buckelew v. Grossbard*, 87 *N.J.* 512, 524 (1981), the Supreme Court described such an opinion:

The "net opinion" rule appears to be a mere restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, is [*sic*] inadmissible. It frequently focuses, as in *Parker v. Goldstein*, [78 *N.J.Super.* 472 (App.Div.1963)], *supra*, on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom. [Citations omitted.]

Although plaintiff was extremely sketchy in answers to interrogatories and spoke in general terms, and Mr. Amron did not coordinate his expert opinion by specifically relating it to the facts prior to the hearing on the County's motion for summary judgment on April 10, 1987, this gap seems to have been cured by the submission of the affidavit of the decedent's brother Kenneth on May 7, 1987 prior to the hearing on May 8, 1987 of plaintiff's motion to reconsider the summary judgment granted in favor of the County. It is not clear from the record whether the trial judge was in possession of Kenneth's affidavit, and counsel did not refer to it in his argument. Nonetheless, from the pleadings, interrogatories, certifications and affidavits before the court on May 8, 1987, it is clear that the summary judgment in favor of the County, even if properly granted on April 13, 1987, should have been set aside. It is undisputed that the roadway and the guard rail were owned by, under the control of, and to be maintained by the County even if they had

been constructed by or on behalf of the State in 1965. It is a fair inference from the fact that Kenneth skidded on the slippery roadway as he went into the curve that the decedent, riding ahead of him 200 to 300 feet, likewise skidded. The existence of blood and chunks of flesh on the threaded rod sticking out horizontally five feet from the beginning of the guard rail, together with the autopsy report, creates an inference that decedent had become impaled on this rod when thrown off his motorcycle as a result of the skid.

Summary judgments are to be granted with extreme caution. On a motion for summary judgment the moving papers and pleadings are to be considered in a light most favorable to the party opposing the motion, all doubts being resolved against the movant. *See Ruvolo v. American Cas. Co.*, 39 *N.J.* 490, 499 (1963). The summary procedure is no substitute for a plenary trial. *See United Advertising Corp. v. Metuchen*, 35 *N.J.* 193, 196 (1961); *Baer v. Sorbello*, 177 *N.J.Super.* 182, 185 (App.Div.), certif. den. 87 *N.J.* 388 (1981). The rule requires that the judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2. The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one. *Judson v. People's Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 74 (1954).

The summary judgment in favor of the County is reversed and the matter remanded for trial.