637 A.2d 238

GEORGE BRAUN AND MARCELYN BRAUN, PLAINTIFFS, v. THE TOWNSHIP OF MANTUA, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT/THIRD–PARTY PLAINTIFF, v. TOBY J. REID, KATHARINE D. REID, FRANK D. FEDERICO AND MARY E. FEDERICO, THIRD–PARTY DE-FENDANTS.

Superior Court of New Jersey
Law Division Gloucester County

Decided April 30, 1993.

*Bruce C. Hasbrouck* (*Hasbrouck & Uliase,* attorneys) and *Anthony P. Pasquarelli* (*Methfessel & Werbel,* attorneys) for plaintiffs.

*David W. Morgan* (*Holston, McDonald & Morgan,* attorneys) and *Timothy J. Galanaugh* (*Murphy & O'Connor,* attorneys) for defendant/third-party plaintiff.

*Francis A. Nemazie,* for third-party defendants Reid (*Cynthia P. Liebling,* attorney).

*Edgar E. Moss, II,* for third-party defendants Federico (*Moss, Powers & Kugler,* attorneys; *Stephen E. Siegrist,* on the brief).

KLEINER, J.S.C.

The factual history presented to this court on motion for summary judgment filed by the defendant-third-party plaintiff, Township of Mantua (hereafter Mantua), requires this court to analyze the legal responsibilities imposed upon the dominant and servient tenants of a public right-of-way and the effect of Title 59, New Jersey Tort Claims Act, *N.J.S.A.* 59:4–1, as it may pertain to damage claims arising from the dominant tenant's alleged failure to adhere to those recognized legal responsibilities.

This suit in lieu of prerogative writ, *R.* 4:69–1, was instituted by plaintiffs, George Braun and Marcelyn Braun (hereafter Brauns), to compel Mantua to rebuild a dam and a public roadway, supported by the dam, which abuts his property. Plaintiff's complaint also includes a demand for damages thus invoking a consideration of the applicability of *N.J.S.A.* 59:4–1 to –9 and issues of governmental immunity.

Mantua filed an answer denying liability and asserted a counter-claim requiring plaintiffs to rebuild the dam and the roadway. It also filed a third-party complaint naming Toby J. Reid and Katherine D. Reid (hereafter Reids), and Frank V. Federico and Mary E. Federico (hereafter Federicos), as third-party defendants. Mantua seeks a judgment compelling Reids and Federicos to rebuild the dam and the supported right-of-way.

Brauns, Reids and Federicos have separate deeds to property adjoining a 400 foot dam situate in Mantua Township. Each deed contains a metes and bounds description, confirmed by survey to be accurate, establishing the centerline of the roadway as one common boundary line of the individually owned tracts.

The exact date(s) of the construction of the dam and/or roadway is unknown, however, maps have been located that cite the existence of the dam, a lake created by the dam, and a roadway atop the dam as early as 1876.

Prior to July 5, 1989, the dam supported a fifteen foot wide asphalt paved road. It is approximately two miles long and connects State Highway, Route 45 with Pinemill Road, situate in East Greenwich Township. All counsel have described this paved road, known as Boody's Mill Road, as an "easement" acquired through general usage. The artificial lake created by the dam is commonly known as Boody's Mill Lake.

Expert reports, submitted as exhibits to motion pleadings, opine that on or about July 5, 1989, unusually heavy rains occurred in Mantua Township and the heavy accumulation of rain produced excessive seepage through the embankment side slopes of the dam. These slopes consist of highly permeable sand soil. The accumulation of excessive water created a condition known as "piping" which gradually eroded the soil embankment resulting in a "breach" of the dam, its ultimate collapse, and the resultant destruction of the public right-of-way.

When Mantua refused to assume responsibility to rebuild the dam and public right-of-way, Brauns instituted this litigation.

## I

It is undisputed that the roadway which is used by the general public has always been primarily maintained and controlled by Mantua. Township personnel provided snow removal, weed clearance, and gravel replacement. Mantua also installed a corrugated pipe in the base of the dam which serves as a funnel for water disposal, and has added gravel to the dam embankments.

Since the origin of the road is unknown, there is no evidence that any plan respecting the installation of the roadway, or of the dam, was ever considered or approved by the Mantua Township governing body or by the New Jersey Legislature.[1]

It is clear that each property owner whose title in fee encompasses land to the middle of the road is a servient tenant to the owner of a road easement, who by law is deemed the dominant tenant. It is undisputed that a dominant tenant has a duty to maintain and repair an easement on the property of another. *Island Improvement Association v. Ford,* 155 *N.J.Super.* 571, 574–75, 383 *A.*2d 133 (App.Div.1978).

Although Mantua admits that it is the dominant tenant, it contends that its sole responsibility is to maintain the easement by keeping the roadway clear and even for safe passage. *Haven Homes v. Raritan Township,* 19 *N.J.* 239, 244, 116 *A.*2d 25 (1955). Mantua also supports its position by citing *Livermore v. Board of Chosen Freeholders of Camden,* 31 *N.J.L.* 507 (E. & A.1864), and *Jernee v. Board of Chosen Freeholders of the County of Monmouth,* 52 *N.J.L.* 553, 21 *A.* 295 (E. & A.1890). In both of those precedents, the county constructed a public roadway across a mill dam, which had been constructed by mill owners, and which, due to unusual storms or otherwise, fell into disrepair. In each case, suit was instituted against the County for maintenance. In both cases, the court found that there was no duty on the part of the

---

[1] The absence of a plan or design is critical in the analysis of governmental immunity, *N.J.S.A.* 59:4–6, and is discussed in part II of this opinion.

County to maintain the structure, as the County's responsibility was limited to providing safe passage for travelers utilizing the road, *Livermore, supra,* 31 *N.J.L.* at 509; *Jernee, supra,* 52 *N.J.L.* at 557, 21 *A.* 295. Mantua contends that it has satisfied its only duty by its continuous efforts of patching and repaving the roadway, and by snow removal during winter storms.

Consistent with this position, Mantua also specifically asserts that *N.J.S.A.* 58:4-1 (entitled Dams and Reservoirs) and the administrative regulations promulgated by the Division of Water Policy and Supply (specifically *N.J.A.C.* 7:20-1.11(e)) require the owner of a dam to have a regular inspection performed every four years by a licensed New Jersey professional. Mantua contends: no engineering inspections were ever conducted by the individual property owners; inspections would have revealed the permeable soil conditions of the dam embankments and the continuing erosion; and the failure to conduct inspections constitutes negligence on the part of the property owners and renders them liable to Mantua for the damages to the right-of-way, which occurred with the collapse of the dam. *Righter v. Jersey City Water Supply Co.,* 73 *N.J.L.* 298, 63 *A.* 6 (Sup.Ct.1906).[2]

In response, each property owner has asserted diverse facts to support their individual denials of responsibility to rebuild Boody's Mill Road. Some facts are relevant to the disposition of these motions.

Federicos specifically claim that although they may own land in fee to the center of the dam, they actually own no lake frontage, do not use the lake for water recreation, and have never undertaken any repairs to the road atop the dam. They assert that their

---

[2] Although Mantua seeks an order for summary judgment declaring the property owners responsible to rebuild the dam and the road, it has not asserted a claim for damages to the roadway. Mantua's brief fails to cite any authority in support of its ˌrequested relief that shows that any property owner can be compelled to rebuild the dam on its own property in conjunction with adjoining property owners, or that they can be compelled to install a road for use by the general public.

grantor, one Vasello, had previously conveyed an easement to Reids, over the Vasello property, permitting Reids access, for maintenance purposes, to the dam and its spillway. Federicos contend that any dam maintenance obligation imposed by *N.J.A.C.* 7:20–1.11(e) is inapplicable to them and is only applicable to Reids by virtue of Reids' easement.

Reids contend that although they have occasionally removed leaves and branches which blocked the concrete spillway of the dam, have painted the spillway, and have reinforced the spillway with a metal support pipe, those acts cannot support Mantua's contention that Reids may be compelled to rebuild the dam or the road.

Additionally, Reids assert that the ultimate dam failure resulted from a deterioration of the corrugated pipe running beneath the dam, which was installed by Mantua, and that the pipe deterioration was the proximate cause of the breach of the dam; thus, Mantua has the responsibility of restoring the dam and the road.[3]

Brauns' position is less personal. They contend Mantua, as the owner of the dominant estate, has a duty to maintain the road and since the road cannot exist without its lateral supports which are in this instance, the dam embankments, it must maintain them. Thus Brauns contend that the dominant tenant must be deemed responsible for all obligations imposed by *N.J.S.A.* 58:4–1 to –10 including the obligation for periodic inspections of the dam, *N.J.A.C.* 7:20–1.11(e).

Brauns, Federicos and Reids argue, although for different articulated reasons, that the owner of a servient tenement is not under an obligation to incur the expense of maintaining the easement (*Ingling v. Public Service Electric and Gas Co.,* 10 *N.J.Super.* 1,

---

[3] The allegation as to causation is not supported by any certification or exhibit attached to Reids' pleadings but is merely asserted in their brief. Since the record before this court fails to disclose whether this theory of causation is supported by expert testimony, the court will consider that such a report does exist.

10–11, 76 *A.*2d 76 (App.Div.1950); *Island Improvement Association v. Ford, supra,* 155 *N.J.Super.* at 574, 383 *A.*2d 133) and that the entire structure comprised of the dam, spillway, and roadway, are so interrelated, that the maintenance responsibility should be imposed upon the dominant tenant.

This latter combined argument is persuasive. Although the legally required duty of Mantua may only encompass a duty to provide safe passage for users of the road, that safe passage can only be assured if the dam itself is secure. The most exhaustive efforts by Mantua to maintain and control the roadway, which it provides for public use and accommodation, would be for naught, unless the underpinning of the road, in this instance the dam, is also vigilantly and safely maintained.

Thus in a case where facts concerning construction of the dam are unknown and where it cannot be said that the dam was constructed for the specific benefit of the adjoining property owners, as in *Island Improvement Association v. Ford, supra,* 155 *N.J.Super.* at 571, 383 *A.*2d 133, it may be concluded that the dominant tenant who has the duty to maintain the road, which it owns, must also be deemed responsible for maintaining the dam upon which the road is constructed.

This conclusion is buttressed by the attributes of a public street, as enumerated in McQuillen, *Municipal Corporations* § 30.06 (3rd ed. 1990): "(1) The surface; (2) so much beneath the surface as is necessary for a foundation for the surface and for water main, gas pipes and conduits of various sorts; and (3) enough above the surface to afford clearance for traffic."

However, Mantua's duty to maintain the dam under the facts of this case, cannot relieve the adjoining property owners, as owners of the dam, of their obligations under *N.J.S.A.* 58:4–1, and their specific obligation to inspect the dam as imposed by our Administrative Code, *N.J.A.C.* 7:20–1.1 to –1.11. The pertinent provisions of the Administrative Code applicable to the construc-

tion, repair or modification of a dam, promulgated pursuant to *N.J.S.A.* 58:4–1, Dams and Reservoirs, provide:

*N.J.A.C.* 7:20–1.2 Definitions

"Dam" means any artificial dike, levee or other barrier, together with appurtenant works, which is constructed for the purpose of impounding water, on a permanent or temporary basis, that raises the water level five feet or more above the usual, mean, low water height when measured from the downstream toe-of-dam to the emergency spillway crest or, in the absence of an emergency spillway, the top-of-dam.

. . . .

"Owner and/or operator" means any person who owns, controls, operates, maintains, manages or proposes to construct a dam.

. . . .

*N.J.A.C.* 7:20–1.11 Dam operating requirements and inspections: new and existing dams

(e) Owners or operators of Class III and IV dams shall have a regular inspection performed every four years.....

(g) All inspections shall be performed in compliance with the following requirements:

1. ...

2. Formal and regular dam inspections shall be performed by a licensed New Jersey professional engineer.

. . . .

From the facts presented it may be concluded that the ultimate collapse of the dam may be attributable to the concurrent failure to maintain the dam and to the failure on the part of the owners of the dam to properly inspect the dam. Conceptually, Mantua and the property owners may be joint tortfeasors. Clearly the question of causality raises genuine issues of material fact which preclude summary judgment. *R.* 4:46. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 73–75, 110 *A.*2d 24 (1954).

## II

The ultimate issue respecting damages is specifically controlled by the requirements of *N.J.S.A.* 59:4–1(c) and *N.J.S.A.* 59:4–2.

*N.J.S.A.* 59:4–1(c) provides:

c. "Public Property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.

The definition of public property clearly encompasses roads. *Whaley v. County of Hudson,* 146 *N.J.Super.* 76, 368 *A.*2d 980 (Law Div.1976). *See also Morris v. Clinton Tp.,* 225 *N.J.Super.* 58, 541 *A.*2d 1070 (App.Div.1988), which exonerated the State for tortious responsibility arising from road conditions where the road had been deeded to a county which assumed responsibility and operation of the roadway.

*N.J.S.A.* 59:4–2 provides:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; *or*

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

It is unquestioned that Mantua is the owner of the public right-of-way known as Boody's Mill Road. As determined above, Mantua has a duty to maintain the structure upon which said road is constructed. Liability for a breach of that duty, however, may only be imposed if each separate condition of *N.J.S.A.* 59:4–2 is proven by a preponderance of the evidence. Once the issue of liability is established, it is clear that damages attributable proxi-

414

mately to the proven negligent conduct may be recoverable. The extent or the right of Brauns to recover damages must await a determination of their percentage of liability attributable to their failure to inspect the dam with any percentage of liability attributable to Mantua's alleged failure to maintain the dam. Both acts may, dependent upon the proofs, be concurrent proximate causes for the collapse of the dam and the resultant destruction of the roadway.

■ Mantua has additionally cited *N.J.S.A.* 59:4–6, Plan or Design Immunity, as a basis to escape any responsibility to respond in damages. However, Mantua has not presented any documentation to establish that the dam was originally constructed or improved pursuant to a plan or design approved in advance of construction or improvement by a governing body of a public entity, and thus, the immunity afforded by statute is not applicable to the factual setting of this litigation.

Although the parties have raised questions in these motions as to the types of damages which might be recoverable, it is clear that a resolution of this debate is premature. Brauns' demand for damages are permissible claims, *Henry Clay v. Jersey City,* 74 *N.J.Super.* 490, 181 *A.*2d 545 (Ch.Div.1962), and may encompass claims which affect quality of life issues, *Ayers v. Jackson Township,* 189 *N.J.Super.* 561, 461 *A.*2d 184 (Law Div.1983). The full panapoly of damages as discussed in 4 *Restatement of Torts* § 910, p. 559 (1939), as discussed in *Henry Clay,* are assertable by Brauns.

■ The primary object of Brauns' complaint is the demand that Mantua be compelled to rebuild the dam and the roadway, yet Brauns can cite no precedent in which a governmental entity has been specifically ordered to construct a public road. Governmental decisions respecting road construction are clearly legislative and our courts have consistently held that in the absence of fraud, illegality, or palpable abuse of discretion, legislative decisions will not be disturbed, or ordered, by the judiciary.

In *Hoglund v. City of Summit*, 28 *N.J.* 540, 552, 147 *A.*2d 521 (1959) the Supreme Court refused to interfere with a municipal decision to improve streets and install sewers paid for from general tax revenues. The Supreme Court stated that:

> The authorities universally recognize that municipalities have a wide latitude of discretion with respect to public improvements and that the courts will not interfere with the legislative judgment in the absence of fraud or palpable abuse of discretion.... The decision if there be any reasonable basis to support it is conclusive. Ultimate review of the expediency of the improvement is generally to be had at the polls.

In *Wayne Township v. County of Passaic*, 125 *N.J.Super.* 546, 312 *A.*2d 168 (Law Div.1973), *aff'd in part and rev'd in part on other grounds*, 132 *N.J.Super.* 42, 332 *A.*2d 207 (App.Div.1974), the trial court concluded, at 125 *N.J.Super.* 552–53, 312 *A.*2d 168:

> Since the county board exercises a discretionary authority, matters of public road improvements are generally beyond judicial cognizance:
>
> > The wisdom of making public improvements is not a matter for judicial investigation, and the courts will not intervene in the proceedings to bring about a public improvement in the absence of fraud or patent illegality. [*Paramus v. Bergen County*, 25 *N.J.* 492, 496, 137 *A.*2d 425 (1958)]
>
> Likewise, the manner of the exercise of such discretion is ordinarily beyond judicial review in a proceeding in lieu of prerogative writs:
>
> > So long as [a public body] operates within the orbit of its statutory authority, it is well established that the courts will not interfere with the manner in which it exercises its power in the absence of bad faith, fraud, corruption, manifest oppression or palpable abuse of discretion. [*Newark v. N.J. Turnpike Authority*, 7 *N.J.* 377, 381–382, 81 *A.*2d 705 (1951)]
>
> More specifically, *mandamus* is not available where discretion is exercised within the law:
>
> > The discretion beyond control by *mandamus* is that exercised under the law, and not contrary to law * * * Where there is an omission to do what the law clearly and unmistakably directs as an absolute duty, *mandamus* is an appropriate remedy. [*Reid Development Corp. v. Parsippany–Troy Hills Tp.*, 10 *N.J.* 229, 237, 89 *A.*2d 667 (1952)]

Likewise our courts have rejected interference in governmental decisions affecting road construction, for example, in *City of Newark v. New Jersey Turnpike Authority*, 7 *N.J.* 377, 81 *A.*2d 705 (1951) (suit arising from construction of turnpike interchange); *Mayor of Elizabeth v. New Jersey Turnpike Authority*, 7 *N.J.Super.* 540, 72 *A.*2d 399 (Ch.Div.1950) (suit challenging site selection

of a turnpike interchange); *Borough of Paramus v. Bergen County*, 25 *N.J.* 492, 137 *A.*2d 425 (1958) (suit challenging a decision to widen an existing roadway).

In *Borough of Paramus v. Bergen County, supra*, 25 *N.J.* at 496, 137 *A.*2d 425, the court, in discussing judicial non-interference in legislative decisions concerning road improvements, specifically stated:

> The decision to make improvements would ordinarily appear to be entirely a matter of legislative discretion with which the Courts customarily would not interfere.

> The wisdom of making public improvements is not a matter for judicial investigation, and the courts will not intervene in the proceedings to bring about a public improvement in the absence of fraud or patent illegality.

The record before this court fails to demonstrate what action, if any, has been pursued by Brauns, or other taxpayers, to stimulate any decision on the part of Mantua Township to address the issues raised by this case. This court may not superimpose its authority over this purely legislative decision.

For the reasons expressed, Brauns' demand for an order compelling Mantua to rebuild this dam and Boody's Mill Road is denied. Mantua's cross-motion for summary judgment as to Brauns' complaint for damages is denied pending a trial on liability and damages within the purview of *N.J.S.A.* 59:4–2. As a management order the court, sua sponte, based on the conclusions of this opinion, will permit Mantua to amend its third-party complaint to assert claims against Reids and Federicos as joint tortfeasors, and will permit Reids and Federicos to amend their respective answers to assert a counterclaim against Mantua and to file a fourth-party complaint against Brauns alleging liability as joint tortfeasors. All pleadings shall be amended within twenty days of the entry of an order consistent with this opinion. Mantua's claims against Brauns, Federicos and Reids to compel reconstruction of the dam and roadway cannot be dismissed at this time, as a formal motion seeking that relief was never filed.