871 A.2d 96 (2005)
376 N.J. Super. 496
Mike KHALIL, Plaintiff-Appellant,
v.
Naresh and Anita MOTWANI, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2005.
Decided March 17, 2005.
*97 Mike Khalil, appellant, argued the cause pro se.
Naresh Motwani, respondent, argued the cause pro se.
Before Judges WEFING, PAYNE and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we hold that tenants of property benefited by an easement over a neighbor's property were entitled to use the easement, even though "tenants" were not expressly referred to in the instrument that created the easement, and we likewise hold that tenants have the right to sue to enforce this right. As a result, we reject the trial judge's determination that a tenant  here, plaintiff Mike Khalil  did not have standing to sue, but we conclude that the property owners burdened by this easement  defendants Naresh and Anita Motwani  were, and are, under no obligation to remove snow from the easement and were, and are, only obliged to avoid doing anything in the enjoyment of their property that would unreasonably obstruct or hinder the beneficiaries' use of the easement. Accordingly, we affirm the judgment that dismissed the complaint, but for reasons other than those relied upon by the trial judge. See Isko v. Planning Bd. of Livingston Tp., 51 N.J. 162, 175, 238 A.2d 457 (1968).

I
In 1962, the prior owners of 34 Grunauer Avenue, Saddle Brook, now owned by defendants Motwani, granted to the prior owners of the adjacent 28 Grunauer Avenue, by way of a written and recorded instrument, an easement "for the purpose of freely passing on foot or with animals, vehicles, through and over" a portion of 34 Grunauer Avenue to Claremont Avenue.[1]
Khalil is a tenant in one of three apartments contained within the structure located at 28 Grunauer. By way of this Special Civil Part action, Khalil sought damages for having allegedly cleared snow within *98 the easement over the course of three years. He sought damages of $2,300, an amount that included the purchase of a snowblower ($399), the cost of gas ($199), and his "pain and suffering." During a non-jury trial, the judge heard the testimony of the parties as well as other tenants of 28 Grunauer. At its conclusion, the judge held that since Khalil was not the owner, but only a tenant, he had no standing to seek relief from defendants concerning this easement and dismissed the complaint.

II
While our jurisprudence is replete with decisions interpreting instruments that convey property interests and decisions defining the rights of parties that are burdened or benefited by easements, we are unaware of any decisions that define the scope of beneficiaries that may sue to enforce the terms of an easement.
In considering this matter of first impression, we agree with the American Law Institute's logical view that, in general, standing to sue to enforce the use of an easement is commensurate with the right to use the easement, regardless of whether the suitor holds title to the benefited property:
A person who holds the benefit of a servitude under any provision of this Restatement has a legal right to enforce the servitude. Ownership of land intended to benefit from enforcement of the servitude is not a prerequisite to enforcement....
[Restatement (Third) of Property: Servitudes, § 8.1 (2000).]
While our courts have not previously discussed this issue, we can see no reason to depart from the common sense position that the right to benefit from an easement includes the right to sue to enforce that right. In so holding, we fall in alignment not only with the American Law Institute, but also with other jurisdictions that have considered the same problem. See Coggeshall Dev. Corp. v. United States, 23 Cl.Ct. 739, 743 (1991); Shore Exploration and Prod. Corp. v. Exxon Corp., 976 F.Supp. 514, 523 (N.D.Tex.1997); Turner Adver. Co. v. Garcia, 252 Ga. 101, 311 S.E.2d 466, 468, cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); Old Dominion Iron & Steel Corp. v. Virginia Elec. & Power Co., 215 Va. 658, 212 S.E.2d 715, 721 (1975); see also 3 Powell on Real Property ¶ 405 at 34-23 (1990). In circumstances analogous to the matter before us, the court in Old Dominion held that a lessee had standing to enforce the terms of an easement that benefited the leased premises.
The only imaginable repercussion arising from an expansive view of the class of potential suitors beyond property owners in this setting is the potential for multiple suits and conflicting results. Notwithstanding, we would anticipate that future litigants, and our courts, will be mindful that other interested persons beyond the named parties ought to be provided with notice of such a suit. Otherwise, what we view as a common sense approach to standing may be troubled by the possibility that issues concerning the meaning, scope or enforceability of an easement could be adjudicated without the involvement of all interested parties.

III
Since we have held that the right to sue in this circumstance is commensurate with the suitor's right to benefit from the easement, we must determine whether Khalil has the right to use this easement. As suggested by § 8.1 of the Restatement, supra, the granting of a right to the benefits of an easement is the product of the *99 intent of the parties to the conveyance. Beyond that, the extent to which that benefit may apply is not easily defined. Rather, it has been recognized that:
[t]here is wide diversity in the types of land-use arrangements that can be implemented by servitudes. Depending on the nature and object of the arrangement, the parties may create servitudes whose benefits will be held personally, in gross, or appurtenant to another interest in land. They may create benefits to be held successively, first as an appurtenance to land, then, after the holder has parted with the interest to which it was appurtenant, to be held in gross. The parties may create servitude benefits to be held by many different holders in different capacities, concurrently and successively. In determining what the parties intended, the full range of possibilities should be kept in mind.... [T]here are no limits on the kinds or combinations of servitude benefits that can be created.
[Restatement, supra, § 2.6 comment c.]
Whether Khalil, a tenant, is entitled to benefit from the easement turns on our interpretation of the language of the instrument that created the easement, as well as the common human impulses that were undoubtedly at play in its creation.
While the record suggests that defendants never attempted to preclude Khalil, or any of the other tenants of 28 Grunauer, from using the easement over the course of the last few years, that would only suggest, standing alone, that the tenants had been afforded a license to use the easement. That does not necessarily mean that Khalil had a legal right to its use. Indeed, the existence and extent of Khalil's right to use the easement has been indirectly challenged by defendants' resistance to Khalil's claim. Accordingly, we must look beyond any recent course of conduct and determine the parties' rights and obligations regarding this easement by examining its terms and by searching for the intent of the original grantor.
The grantor, through the instrument that created this easement, bestowed its benefits upon the existing owners of 28 Grunauer as well as "their heirs and assigns, their servants, agents, employees, invitees and licensees." Initially, we observe that this language demonstrates that the easement did not end with the termination of the original grantee's ownership of the property. Instead, because the right to use the easement was also expressly extended to the original grantee's "heirs and assigns," the presumed intent of the original grantor was to have the benefits of the easement "run with the land," Calabrese v. McHugh, 170 F.Supp.2d 243, 253 (D.Conn.2001); Hartzfeld v. Green Glen Corp., 380 Pa.Super. 513, 552 A.2d 306, 309 (1989), and that those benefits would survive any subsequent conveyance or devise by the original grantee. Stated another way, the right to use the easement will continue to exist in the hands of an "heir"[2] or "assign"[3] of the original grantor in perpetuity because the grantor of the easement, through the use of such broad terms, intended to remove his conveyance *100 from the category of personal covenants intended to apply only to the original parties. Olson, supra, 44 N.J.Super. at 387, 130 A.2d 650.
Understanding the duration of the easement, while suggestive of the grantor's expansive intent, does not necessarily help define the scope of persons entitled to use the easement. In order to understand the grantor's demarcation of the extent of permitted users, we are obligated to consider the significance of the grantor's specification of those persons in the instrument. That is, by the express terms used, the grantor unmistakably intended to extend the right to use the easement not only to the original grantee's "heirs and assigns," but also to their "servants," "agents," "employees," "invitees," and "licensees." A depthless view of these descriptive terms might suggest that tenants were excluded because the word "tenant" was not expressly uttered in the instrument. We conclude, however, that such an approach should be rejected because it would lead to an illogical result.
In this setting, "the intent of the conveyor is normally determined by the language of the conveyance read as an entirety and in the light of the surrounding circumstances." Hammett v. Rosensohn, 26 N.J. 415, 423, 140 A.2d 377 (1958); see also Poblette v. Towne of Historic Smithville Cmty. Ass'n, Inc., 355 N.J.Super. 55, 63, 809 A.2d 178 (App.Div.2002). As Judge Goldmann observed, "when there is any ambiguity or uncertainty about an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement, and the requirements of the grantee, play a significant role in the determination of the controlling intent." Hyland v. Fonda, 44 N.J.Super. 180, 187, 129 A.2d 899 (App.Div.1957).
Even though the record on appeal provides little evidence as to the circumstances that "surrounded" the original grant of this easement, we conclude from what may be inferred that the burdened and the benefited properties were then used as single-family residences.[4] It is not entirely clear whether all or any part of 28 Grunauer was being leased when the easement was conveyed in 1962, but we think it unlikely  although we need not decide  that any subsequent conversion of the structure on 28 Grunauer into three leased apartments so significantly changed the "surrounding circumstances" as to warrant, at this time, some different interpretation of the current right to use the easement. Whether an easement has been overburdened to a breaking point, where its further use should be eliminated or restricted, is not always a simple matter to resolve. For example, it might have been significant, in determining the present right to use the easement, if 28 Grunauer was now being used as a glue factory or slaughterhouse. In such a circumstance, it would likely be held that the "surrounding circumstances" had so significantly changed from the time the easement was granted that the burdened property should no longer be required to suffer its neighbor's use of the easement. See, e.g., Lidgerwood Estates, Inc. v. Public Serv. Elec. & Gas Co., 113 N.J. Eq. 403, 407, 167 A. 197 (Ch.1933) ("[T]he servient tenement will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement ... and the use of the easement must not unreasonably interfere with the use and enjoyment of the servient estate."); Hyland, *101 supra, 44 N.J.Super. at 189, 129 A.2d 899. On the other hand, it is arguable that a conversion of the structure from a single-family residence to a structure containing three apartments does not constitute the type of qualitative change that would impact upon an easement's enforcement. Because defendants have not argued that the use of the easement has been over-extended, we assume, without deciding, that any change in the use of the benefited property in these circumstances has not so increased defendants' burden as to impact upon our interpretation of the instrument.
Since we assume there was no qualitative change in 28 Grunauer that might affect the present day enforcement of the easement, and since there is no other evidence in the record relating to the "surrounding circumstances" of these adjacent properties at the time of the original grant, we are left to interpret the scope of this easement solely by resort to the language of the instrument itself. In this regard, we observe that other than the absence of the word "tenant," the grantor's listing of the easement's beneficiaries is quite broad. The sense that the grantor intended a potentially large class of beneficiaries, that would include tenants of 28 Grunauer, is apparent from the very tenor and appearance of the instrument. The document is instinct with such a purpose. We note, for example, that the grantor mentioned no persons who would be excepted from its use, that the grantor's listing of the persons permitted to use the easement were stated conjunctively, not disjunctively, and that the grantor described the intended beneficiaries through the use of broad generalities. These qualities suggest that a limited reading of the instrument's collection of terms would run contrary to the grantor's probable intent and would result in potentially nonsensical exclusions.
That is, the grantor expressly intended that "servants, agents, employees, invitees and licensees" of the original grantee's "heirs" and "assigns" were entitled to use the easement. To interpret this language to exclude "tenants" would not only appear inconsistent with the terms expressly utilized but could also lead to absurd results. Following this nonsensical approach to its logical conclusion, we would have to reach the unsatisfactory conclusion, among others, that persons invited onto the property by a tenant would be entitled to use the easement, but not the tenant who invited them onto the property. In the absence of any language or other evidence that would suggest that the grantor intended such a result, we reject the invitation to construe the document in that peculiarly limited fashion. See also Levinson v. Costello, 74 N.J.Super. 539, 546, 181 A.2d 791 (App.Div.1962) (adopting a construction that would include invitees of persons possessing the right to use the easement even though invitees were not expressly mentioned in the instrument creating the easement).
Moreover, we are also satisfied that the words "invitee" and "licensee" are broad enough to fairly include "tenants." Traditionally, an "invitee" is someone who comes onto property by permission and a "licensee" is someone who is not invited but whose presence is suffered. See, e.g., Tomsky v. Kaczka, 17 N.J.Super. 211, 216, 85 A.2d 809 (App.Div.1952). Since a tenant possesses the right to occupy property through a contractual relationship with the property's owner, a tenant could be said to have been "invited" by the owner, or his presence on the property could be said to be "suffered" so long as rent is paid to the owner. In any event, a tenant's rights are so closely analogous, in this context, to the rights of the owner, and, indeed, superior to the rights of employees, *102 servants, invitees and licensees, as to compel our adoption of a construction that includes tenants in the group of intended beneficiaries. In a given context, a listing of persons or things should not be precisely limited to those expressly mentioned but may also include, by implication, other persons or things similarly situated. Reilly v. Ozzard, 33 N.J. 529, 539, 166 A.2d 360 (1960). As Chief Justice Weintraub said in Reilly, "[t]he issue is one of intention [and][t]he answer resides in the common sense of the situation." Ibid. That is, while we must, and will, refrain from rewriting this instrument to afford greater or different rights than those literally and unambiguously expressed, our chief obligation in interpreting this instrument is to ascertain the grantor's intent, when inadequately expressed, through the application of common sense. As a result, since the grantor defined the beneficiaries of the easement in broad terms, we adopt an expansive view of those terms to include other consistent terms that went unmentioned. We conclude that a common sense interpretation that includes persons similarly situated as those expressly named, but who went unmentioned due to oversight and not because of an intent to exclude, justifies the inclusion of tenants as persons who may make use of the easement.[5]

IV
Having determined that Khalil has the right to use the easement "for the purpose of freely passing on foot or with animals, vehicles, through and over the easement," and has the right to sue to enforce that right, we nevertheless conclude that Khalil's claim to damages for having allegedly removed snow from the easement over the past three years is not cognizable as a matter of law. The removal of snow from an easement is a matter of maintenance. In general, the beneficiary of the easement, not the owner of the burdened property, is obligated to maintain the easement, Poblette, supra, 355 N.J.Super. at 67, 809 A.2d 178; Island Improvement Ass'n v. Ford, 155 N.J.Super. 571, 574-75, 383 A.2d 133 (App.Div.1978); Braun v. Township of Mantua, 270 N.J.Super. 404, 408, 637 A.2d 238 (Law Div.1993); Restatement, supra, § 4.13(2), unless otherwise required by the easement or other agreement, Poblette, supra, 355 N.J.Super. at 67, 809 A.2d 178; Restatement, supra, § 4.9, or unless the easement is jointly utilized, for the same purposes, by the property owner with the benefited parties, id., § 4.13(3). Despite our broad interpretation of the class of persons whom the grantor intended to benefit, there is nothing in the instrument that would suggest the imposition of an obligation on the grantor, or his successors, to maintain or repair the easement for the benefit of the easement users. There is also no evidence in the record to suggest that the residents of 34 Grunauer make any use of the easement to gain access to 28 Grunauer. Accordingly, we conclude that the obligation to maintain or repair the easement rests solely with the beneficiaries of this easement. In this context, defendants were, and remain, obligated only to refrain from taking any action with respect to the easement that would "unreasonably interfere" with the beneficiaries use of the easement. Tide-Water Pipe Co. v. Blair Holding Co. Inc., 42 N.J. 591, 604, 202 A.2d 405 (1964); In re Tideland's *103 License 96-0114-T, 326 N.J.Super. 209, 217, 740 A.2d 1125 (App.Div.1999); Kline v. Bernardsville Ass'n, Inc., 267 N.J.Super. 473, 478, 631 A.2d 1263 (App.Div.1993); Restatement, supra, § 4.9.
The consequence of snow falling within the area of the easement is governed by the principles outlined above. See Muxworthy v. Mendick, 66 A.D.2d 1017, 411 N.Y.S.2d 737, 739 (1978). Defendants did nothing to "unreasonably interfere" with the use of the easement by the residents of 28 Grunauer. Certainly, defendants did not cause snow to fall into the easement, and they therefore bore no obligation to remove it. To the extent that Khalil may have expended funds or energy in removing snow from the easement, he did so on his account and has no cause of action against defendants in that regard. Since no such claim was made, we express no view as to whether Khalil would have an actionable, similar claim against his fellow tenants or against the owner of 28 Grunauer.
Affirmed.
NOTES
[1] 28 Grunauer fronts on Grunauer Avenue and is, thus, not land-locked. The record is silent as to why this easement, utilized by the residents of 28 Grunauer as a driveway running to Claremont Avenue, was created.
[2] In this context, we would assume that "heir" was intended to connote those persons who would take from the grantee by way of descent. See Sevel v. Swarzman, 33 N.J.Super. 198, 202, 109 A.2d 685 (Ch.Div.1954).
[3] We would also assume that "assign," in this context, "comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law." Olson v. Jantausch, 44 N.J.Super. 380, 388, 130 A.2d 650 (App.Div.1957); see also Packanack Lake C.C. and Cmty. Ass'n v. Alexander D. Doig Dev. Co., 72 N.J.Super. 360, 366, 178 A.2d 243 (Ch.Div.1962).
[4] The instrument that created the easement referred to the original grantees as the residents of 28 Grunauer and a photograph included in the appendix depicts a structure on 28 Grunauer that would appear to have been originally a single-family residence.
[5] We would also note that the grantor's failure to either expressly include or exclude tenants renders the instrument ambiguous as to its application to tenants. Since, in ambiguous circumstances, such an instrument "should be construed most strongly against the grantor," Hyland, supra, 44 N.J.Super. at 187, 129 A.2d 899, the result reached through this type of analysis would also be the same.