**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2009-23
     A-2700-23

529 WATERFRONT
PROPERTIES, LP,

  Plaintiff-Appellant,

v.

MICHAEL GARGIULO,
PATRICIA GARGIULO, and the
BOARD OF ADJUSTMENT
OF THE TOWNSHIP OF
HARDING,

  Defendants-Respondents.

_____

MICHAEL BATTISTA;
TRACEY BATTISTA;
529 WATERFRONT
PROPERTIES, LP; and
COLITE 24, LLC,

  Plaintiffs-Appellants,

v.

MICHAEL GARGIULO and
PATRICIA GARGIULO,

Defendants-Respondents.

_____

Argued October 30, 2025 – Decided November 10, 2025

Before Judges Mawla, Bishop-Thompson, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0014-23; and the Superior Court of New Jersey, Chancery Division, Morris County, Docket Nos. C-000054-20 and C-000055-20.

Arnold C. Lakind argued the cause for appellants (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Arnold C. Lakind, on the briefs).

Ronald Z. Ahrens argued the cause for respondents Michael Gargiulo and Patricia Gargiulo (Riker Danzig LLP, attorneys; Nicholas Racioppi, Jr., of counsel and on the briefs; Ronald Z. Ahrens and Ryan M. Dunn, on the briefs).

Gary T. Hall argued the cause for respondent Board of Adjustment of the Township of Harding in A-2009-23 (McCarter & English LLP, attorneys; Gary T. Hall, of counsel and on the brief).

PER CURIAM

In A-2009-23, plaintiff 529 Waterfront Properties, LP appeals from a February 9, 2024 order entering judgment in favor of defendants Patricia and Michael Gargiulo and the Harding Township Board of Adjustment, upholding the grant of a tree removal permit. In A-2700-23, plaintiffs Michael and Tracey

Battista, 529 Waterfront Properties, LP, and Colite 24, LLC appeal from April 28, 2023 and April 25, 2024 orders granting defendants Michael and Patricia Gargiulo summary judgment regarding an access easement dispute. We affirm.

The parties are neighbors. The Gargiulos[1] own a property located on Block 5, Lot 8 of the Harding Township tax map. 529 Waterfront and its principal Michael Battista own Block 5, Lots 6.01, 6.02, 7.04, and 7.05. We replicate the tax map here:



I.

A-2009-23

---

[1] In both appeals, we refer to appellants as 529 Waterfront and respondents as the Gargiulos, despite the fact there are other named parties. We do this for ease of reference and intend no disrespect.

In 2019, the Gargiulos filed for a permit to remove twenty-eight trees and make landscaping improvements on their lot. The township tree conservation officer conditionally approved the application. 529 Waterfront appealed and the Board passed a resolution upholding the grant of the permit. Again 529 Waterfront appealed, and the trial court entered a consent order dismissing the appeal and directed the Board to have the tree conservation officer send the tree removal application to the township's "Shade Tree Advisory Committee and thereafter make a new decision on the tree removal permit application."

The Board and the tree conservation officer followed suit. After a member of the advisory committee suggested one of the trees, a catalpa, should be preserved because of its excellent condition, the conservation officer re-inspected the tree. He concluded the catalpa had excess decay, was hazardous, and should be removed. 529 Waterfront appealed to the Board, which again upheld the permit approval. In 2022, the Board issued a resolution permitting the Gargiulos to remove the catalpa and twenty-seven other trees, conditioned on replacing them with 370 trees in accordance with the Gargiulos's landscaping plan and other terms.

The matter returned to court after 529 Waterfront filed a complaint in lieu of prerogative writs to reverse the Board. It argued the Board erred because

4

each of the ten factors set forth in the ordinance were not satisfied before the conservation officer granted the tree removal permit. According to 529 Waterfront, the conservation officer also misinterpreted the factors he relied upon, one of which was ambiguous. It also alleged the Board erred when it barred expert testimony from a planner regarding the effects of granting the Gargiulos's permit vis-à-vis the purpose of the ordinance and master plan.

On February 9, 2024, the trial judge issued a detailed written opinion rejecting 529 Waterfront's arguments. He found the officer considered each factor, and the record supported the officer's reliance on the factors he cited. Those were as follows: "(5) Whether the cutting or removal would constitute a significant change in the screening between existing or proposed buildings on adjoining lots;" and "(10) Any planned tree replacement or other landscape plan for revegetating cleared areas."

The judge observed the Board's 2020 resolution "found . . . the [o]fficer's determination . . . the issuance of the [p]ermit would result in improved screening was grounded in factor [five] of the [o]rdinance." The Board relied on the conservation officer's testimony, which it found credible. The judge found "no . . . evidence that would lead [him] to conclude . . . the Board's credibility determination was unreasonable." Neither the conservation officer

nor the Board misinterpreted the ordinance because the ordinance required consideration of all factors, not "that each factor must be satisfied in its entirety." Therefore, "[b]ecause the [o]fficer credibly considered each factor, . . . the Board's decision to defer to the [o]fficer's expertise . . . [was] reasonable."

The judge rejected the argument factor ten was ambiguous. He reasoned, even if it were "ambiguous, the [c]ourt must defer to the Board's finding that the [c]onditions, which explicitly require the replanting of 370 trees, is 'an extensive tree replacement plan[,]' pursuant to factor [ten], and thus, reasonable."

The judge concluded the Board acted reasonably when it barred 529 Waterfront's expert testimony because it relied on the plain language of the ordinance, "rather than define subjective concepts." Quoting Atlantic Container, Inc. v. Township of Eagleswood Planning Board, the judge observed because the "Board has input into the adoption of a master plan . . . as well as the adoption or amendment of a[n] . . . ordinance[,] . . . [the] Board can be expected to have more than a passing knowledge of the legislative intent at the time of the enactment." 321 N.J. Super. 261, 269-70 (App. Div. 1999). In other words, the Board neither misinterpreted its own ordinance nor its master plan.

A.

On appeal, 529 Waterfront argues the judge's ruling the conservation officer considered each factor of the ordinance was erroneous because the officer did not evaluate each factor. According to 529 Waterfront, the difference between considering and evaluating factors is, in the latter case, the officer must determine which factors are relevant, weigh those factors, and explain their decision.

We review municipal-board decisions under "the same standard as the trial court." Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007). This requires recognition that a board's "peculiar knowledge of local conditions" allows it "wide latitude in the exercise of delegated discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013); accord Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 252-53, 255 (App. Div. 2013) (acknowledging the Board of Adjustment's superior "knowledge of local circumstances" entitles it broad deference).

Therefore, "[w]e give deference to the actions and factual findings of local [b]oards." Hoboken for Responsible Cannabis, Inc. v. City of Hoboken Plan. Bd., 480 N.J. Super. 357, 371 (App. Div. 2024). We do not substitute our "own judgment for that of the municipal board invested with the power . . . to pass

upon the application." Kenwood Assocs. v. Bd. of Adjustment, 141 N.J. Super. 1, 4 (App. Div. 1976). However, we review de novo a municipal board and trial court's interpretations of ordinance language. Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 221 (App. Div. 2024).

Where a party contests the decision of a local board, we consider "whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). A municipal board's decision "is presumptively valid, and . . . reversible only if arbitrary, capricious, and unreasonable." Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998).

We use "the established rules of statutory construction to interpret a municipal ordinance." Paff v. Byrnes, 385 N.J. Super. 574, 579 (App. Div. 2006). "Those principles require that an ordinance should be interpreted to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)). Generally, "the best indicator of [legislative] intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005).

A-2009-23

We first consider the "plain language of the" ordinance. <u>Nini v. Mercer Cnty. Cmty. Coll.</u>, 202 N.J. 98, 108 (2010). Our "duty is to . . . apply the statute as enacted." <u>DiProspero</u>, 183 N.J. at 492 (quoting <u>In re Closing of Jamesburg High Sch.</u>, 83 N.J. 540, 548 (1980)). It is not our function to "rewrite a plainly-written enactment," add language, or "engage in conjecture or surmise which will circumvent the plain meaning of the act." <u>Ibid.</u> (first quoting <u>O'Connell v. State</u>, 171 N.J. 484, 488 (2002); and then quoting <u>Jamesburg High Sch.</u>, 83 N.J. at 548).

We interpret words according to their "generally accepted meaning." <u>Kocanowski v. Twp. of Bridgewater</u>, 237 N.J. 3, 9 (2019) (quoting <u>Spade v. Select Comfort Corp.</u>, 232 N.J. 504, 514-15 (2018)). Phrases are "read sensibly rather than literally." <u>Correa v. Grossi</u>, 458 N.J. Super. 571, 580 (App. Div. 2019) (quoting <u>Haines v. Taft</u>, 237 N.J. 271, 283 (2019)). "If the plain language of a statute is clear, our task is complete." <u>Musker v. Suuchi, Inc.</u>, 260 N.J. 178, 186 (2025) (quoting <u>Savage v. Twp. of Neptune</u>, 257 N.J. 204, 215 (2024)).

Pursuant to these principles, we conclude neither the Board nor the judge misconstrued the ordinance. The ordinance reads as follows:

> D. Standards for permit issuance. To the greatest extent practicable, large trees, tree rows and hedgerows should be preserved. In addition, the following factors

shall be taken into consideration in determining whether to issue a permit for tree cutting or removal:

(1) Whether the area where such tree or trees are located will be occupied by a building or structure, a driveway or recreation area, a roadway, an equestrian (bridle) trail, a drainage right-of-way, sewer line, septic system or well, or whether it is reasonably necessary to regrade the area in relation to any of the foregoing, and further provided that such regraded areas shall be restored and landscaped with suitable ground cover, shrubbery and/or trees after construction.

(2) Whether the area where such tree or trees are to be cut down or removed is consistent with the approval of any required subdivision or site plan by the Planning Board or Board of Adjustment and any conditions pertaining thereto.

(3) Whether the cutting or removal would change existing drainage patterns.

(4) Whether the cutting or removal would allow soil erosion or increase dust.

(5) Whether the cutting or removal would constitute a significant change in the screening between existing or proposed buildings on adjoining lots.

(6) Whether the cutting or removal would constitute a horticulturally advantageous thinning of an existing overgrown area,

A-2009-23

taking into consideration the tree species, size and health of the trees to be removed.

(7) Whether the cutting or removal would impair the growth and development of the remaining trees on the applicant's property or adjacent property.

(8) Whether the area where such tree or trees are located has a depression or fill of land which is deemed injurious to such tree or trees or other trees located nearby.

(9) Whether the presence of such tree or trees is likely to cause hardship or will endanger the public or the owner of the property on which the tree or trees are located or an adjoining property owner or for some other adequate reason within the intent of this article.

(10) Any planned tree replacement or other landscape plan for revegetating cleared areas.

[Harding, N.J., Code § 225-111(D) (amended 2024).]

We do not interpret the list of ten factors as requiring the conservation officer to discuss or weigh every factor when forming their decision. Even if this were the case, our review of the record readily shows factors one through four, seven, and eight were not implicated; and factors six and nine supported granting the removal permit. Notably, the ordinance requires the officer to "set

11

forth the basis for" a decision only "in the case of partial or complete disapproval." Harding, N.J., Code § 225-111(C)(5) (amended 2024).

We decline to find error by parsing the definition of "consider" versus "evaluate" as 529 Waterfront suggests. To "consider" something is to "observe" it, "think about" it, or take it "into account." Merriam-Webster's Collegiate Dictionary 265-66 (11th ed. 2003). Whereas to "evaluate" something is "to determine [its] significance." Id. at 432. The plain language of the ordinance does not require an evaluation of the factors. Even if it did, as we noted, it would not lead to a different outcome here.

Indeed, the conservation officer testified how he considered each of the ten factors. He concluded the Gargiulos's landscaping replacement plan "looked like a win-win for everybody." It promised "better screening" and "problem-free plant material." Twenty-seven of the replaced trees were dying, toxic, or not worth preserving. The catalpa was completely hollow, unstable, and dying. It contained a raccoon nest, was covered in feces, and dangerous to people and property.

The Board correctly observed its scope of review was limited to whether the conservation officer's decision "was contrary to the [o]rdinance, not . . . whether a different decision would have been better." It found he "grounded"

the decision "on specific provisions in the" ordinance and deferred to his arboreal expertise. The judge likewise considered whether the conservation officer complied with the ordinance and found nothing in the record showed his or the Board's conclusions were unreasonable.

B.

529 Waterfront argues the judge and the Board erred because they misconstrued factors five and ten of the ordinance, which were ambiguous. This argument lacks merit.

"The meaning derived from [statutory] language controls if it is clear and unambiguous." Schad, 160 N.J. at 170. However, if "varying interpretations of the statute are plausible," then it is ambiguous, and permits a court to interpret the statute by resorting to "extrinsic" evidence. Nini, 202 N.J. at 108 (quoting Bergen Comm. Bank v. Sisler, 157 N.J. 188, 202 (1999)). Statutory ambiguity does not occur "simply because a disagreement exists about what the words convey." State v. Gandhi, 201 N.J. 161, 179 (2010). Courts do not "torture" the facts of a "case to create an ambiguity in an otherwise clear statute." DiProspero, 183 N.J. at 506. We determine ambiguity "by assessing the reasonableness of the parties' positions based on" the court's "own review of the statutory language." Gandhi, 201 N.J. at 179.

A-2009-23

529 Waterfront attacks factor five of the ordinance, noting the Gargiulo permit application concerned a roadway easement with no adjoining lots containing buildings, and the conservation officer and the Board applied the factor in a manner which read the phrase "'buildings on adjoining lots' out of the" ordinance. We reject this argument because the factor requires the conservation officer to consider "[w]hether the cutting or removal would constitute a significant change in the screening between existing or proposed buildings on adjoining lots." Harding, N.J., Code § 225-111(D)(5) (amended 2024). The word "whether" indicates "alternative conditions or possibilities." Merriam-Webster's Collegiate Dictionary 1425 (11th ed. 2003). Neither the conservation officer nor the Board erred because the plain language of factor five considers instances where there are no buildings or adjoining lots.

529 Waterfront asserts the permit should have been rejected because factor five seeks to avoid increased screening, which was a byproduct of the Gargiulos's plan. The permit should have been denied because increased screening also violated the township master plan's goal of preserving vistas. The removal of the trees permitted views of the nearby fields, whereas the Gargiulos plan to replace the trees with hedgerows would obstruct the view.

14

We reject both arguments because they would read new language into factor five. Factor five says nothing about avoiding or promoting increased screening or view preservation. It directs the conservation officer to consider whether there is a significant change in screening.

529 Waterfront claims factor ten is ambiguous because it does not specify which aspects of the replacement plan should be considered, and the conservation officer and Board only focused on the number of trees to be replanted. We are unpersuaded.

The gravamen of the Gargiulos's plan was to remove dead, dying, and toxic trees. The ordinance states it "is not intended to restrict homeowners from removing dead or diseased trees." Harding, N.J., Code § 225-111(A)(2) (amended 2024). Factor ten requires consideration of "[a]ny planned tree replacement or other landscape plan for revegetating cleared areas." Harding, N.J., Code § 225-111(D)(10) (amended 2024). The conservation officer's focus on the trees was reasonable because he testified the township's policy was "not to be over-restrictive in the removal and replacement of trees," but "if you're going to remove a tree, you replace a tree." We discern neither an ambiguity nor a misapplication of factor ten.

C.

529 Waterfront asserts the conservation officer's opinion was not entitled to deference, and his decision should have been reviewed by the Board and the trial judge de novo. It points us to N.J.S.A. 40:55D-74, which states: "The board of adjustment may reverse or affirm, wholly or in part, or may modify the action, order, requirement, decision, interpretation or determination appealed from and to that end have all the powers of the administrative officer from whom the appeal is taken." 529 Waterfront also challenges the judge's affirmance of the Board's rejection of its second planning expert's testimony on relevancy grounds.

We decline to read N.J.S.A. 40:55D-74 as mandating a de novo review of every administrative officer's decision. This would make a board's task on appeal impossible by requiring it to second guess every decision in every appeal. Nothing in our statutes or case law suggests the Legislature intended to burden municipal boards in such a way.

A de novo review is also unwarranted because the Board "has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal." Ne. Towers, Inc. v. Zoning Bd. of Adjustment of Borough of W. Paterson, 327 N.J. Super. 476, 498 (App. Div.

16

2000) (quoting <u>Kramer v. Bd. of Adjustment</u>, 45 N.J. 268, 288 (1965)). The record supports the Board and the trial court's findings the conservation officer's grant of the permit was reasonable. Therefore, whether de novo review was applied or not, we discern no reversible error.

It follows from our discussion there was no error in rejecting 529 Waterfront's second planning expert whom it intended to testify about how the permit application would affect the goals and policy of the township's master plan. At the outset, we note 529 Waterfront called two experts. The first expert was a professional planner; the second was proffered as an expert on "tree health and stability, conservation, and the impacts of trees and the removal on the environment."

The planning expert testified the master plan intended to preserve the township's rural character by preserving trees and hedgerows. He opined the portion of the Gargiulo's property slated for re-landscaping was a tree conservation area.

When the second expert was called, 529 Waterfront's counsel sought to have him also testify on the impact of the Garguilo plan on the rural character of the community. The Board's counsel and chair stated the proposed testimony was not within the witness's expertise and irrelevant to whether the conservation

17

officer followed the ordinance. Following a colloquy on this issue, the hearing adjourned as it was nearing 11:00 p.m.

When the hearing resumed, 529 Waterfront presented testimony from an arborist who explained why the conservation officer erred in his assessment of the trees' health. 529 Waterfront also sought to adduce testimony from a second planner. The Board declined to hear from the planner because it was duplicative of the first planner's testimony and irrelevant to whether the tree removal permit was improperly granted under the ordinance.

"The rules of evidence are not binding on a zoning board." Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 430 (App. Div. 2009). "Technical rules of evidence shall not be applicable to the hearing, but the agency may exclude irrelevant, immaterial or unduly repetitious evidence." N.J.S.A. 40:55D-10(e). "Further, while expert testimony is often presented to a Board of Adjustment and is found helpful, a Board is not bound to accept the testimony of any expert." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 197 (App. Div. 2009).

A zoning board "has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal." Ne. Towers, Inc., 327 N.J. Super. at 498; accord Bd. of Educ. of Clifton, 409 N.J.

Super. at 434-35 (collecting cases). "If the testimony of different experts conflicts, it is within the Board's discretion to decide which expert's testimony it will accept." Klug v. Bridgewater Twp. Plan. Bd., 407 N.J. Super. 1, 13 (App. Div. 2009).

The township's ordinance also reflects the Board's discretionary authority. It states witness testimony before the Board is "subject to the discretion of the presiding officer and to reasonable limitations as to the time and number of witnesses." Harding, N.J., Code § 225-17(C) (amended 2024).

"In reviewing a [tribunal's] evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). 529 Waterfront already presented testimony from its first planning expert. Its arborist also testified the proposed tree removal was "indiscriminate and excessive." Additionally, the ordinance does not require input from a professional planner. The Board therefore correctly concluded the second planner's testimony was irrelevant. The record reflects the proffered testimony was duplicative. Pursuant to these principles and the facts of this case, we discern no reversible error.

Block 5, Lots 6.01, 6.02, 6.03, 7.04, 7.05, and 8 lie west of Van Beuren Road, the nearest public thoroughfare. To recount, 529 Waterfront and Michael Battista own Lots 6.01, 6.02, 6.03, 7.04, 7.05. The Gargiulos own Lot 8.

Title to Lots 6, 6.01, 6.02, 6.03, and 8 derive from a common owner, who acquired the land in 1927. The owner used Lots 6.01 and 6.02 for farming, before creating the easement at issue in this case. Lot 6.03 was comprised of grass and trees, and connected Lot 6.02 to Van Beuren Road, however it was never paved or improved.

Lot 8 included a flagstaff of land 1,250 feet long by 50 feet wide, which ran past Lots 6.01, 6.02, 7.04, and 7.05, and terminated at Van Beuren Road. The flagstaff is vegetated and is where the Gargiulos sought to remove and replant trees.

In 1946, the landowner subdivided and conveyed Lot 6.01 and part of Lot 6.02 to Horace C. Jeffers. The landowner also conveyed Lot 6, 6.03, and the other portion of Lot 6.02 to the Walker family. The land conveyed to Jeffers lacked access to a public road so the deed to Jeffers granted an easement along the flagstaff. The deed forecasted a driveway extending to Van Beuren Road

20

would be built on the fifty-foot right of way, and once completed, Jeffers would have a right of way to enter and exit his property. In the meantime, the deed permitted Jeffers to use "the existing northerly driveway" on the parcel conveyed to the Walkers.

A driveway was constructed across the Lot 8 flagstaff, providing access to Van Beuren Road. The Jeffers deed expressly stated the landowner had not granted Jeffers an "easement by necessity or otherwise" over the land conveyed to the Walkers because they "set aside the fifty-foot strip of land . . . for the purpose of establishing a right of way extending from Van Beuren [R]oad to provide ingress and egress to" Jeffers's land. In 1951, Jeffers conveyed his land to the Walkers, resulting in the Walkers owning Lots 6, 6.01, 6.02, and 6.03.

In 1954, the original landowner conveyed the remaining parcel, Lot 8, to Alice P. Work, "subject to a right of way [fifty] feet in width for all roadway purposes and for the installation and maintenance of utilities, . . . as set forth in the deeds" to Jeffers and the Walkers. In 1965, the Silloway family acquired Lot 8.

In 1975, the Walkers conveyed Lot 6.01 to the Levine family. The Levine deed granted them "the right to share the easement from . . . Jeffers to [the Walkers] by [d]eed . . . , to use, repair[,] and maintain in common with others

A-2009-23

the existing telephone and electric pole lines running along the northeasterly boundary line of the existing right of way." Aside from the utility easement, the deed expressly stated no easement by necessity was granted over the Walkers's remaining lands, "or over the right of way fifty . . . feet in width . . . described in the deed from . . . Jeffers . . . to [the Walkers, and no easement] . . . shall arise by legal implication." Instead, a "strip of land twenty-five . . . feet in width extending northwesterly from Van Beuren Road included in the herein conveyed 3.735 acres is for the purpose of providing ingress and egress to the lands conveyed by the" Walkers to the Levines.

The Silloways were not a party to the Levine deed. In 1983, the Silloways subdivided their land and sometime later, transferred ownership of Lot 8 to the Hawrylo family. The Hawrylos disputed the Walkers' right to use the easement on Lot 8 to access Lots 6, 6.02, and 6.03. The court held the Walkers still had a valid easement along the Lot 8 flagstaff because the driveway was continuously used since 1946 to access Lots 6, 6.02, and 6.03.

In 2003, the Walkers applied to subdivide their land. Although they proposed Lot 6.03 "be a private road lot for access to Lot 6.02," they still planned to continue using the easement on Lot 8 to access Lot 6.02. The Hawrylos objected, contending Lot 6.03's use as a road would abandon the easement over

22

Lot 8 to access Lot 6.02. The Planning Board disagreed, approved the subdivision, and ruled "Lot 6.02 would continue to access Van Beuren via the [e]asement across the flagstaff of Lot 8."

In August 2003, the Carey family acquired Lots 6, 6.02, and 6.03 from the Walkers. A February 2004, subdivision map noted "the shared driveway on Lot 8" was still "the sole means of vehicular access to Van Beuren Road for" the Careys's land, and "any development or improvement of Lot 6.03 as a roadway will be subject to further municipal approvals."

The Gargiulos purchased Lot 8 in 2013. In 2019, 529 Waterfront acquired Lots 6.01, 6.02, and 6.03. 529 Waterfront continued to use Lots 6.01 and 6.02 for farming. The easement was used by pedestrians, and to move farm equipment, livestock, and workers.

As noted in the companion appeal, in December 2019, the township approved the Gargiulos's application to remove trees from Lot 8 and re-landscape the property. In June 2020, 529 Waterfront filed a complaint, alleging the Gargiulos's application to improve Lot 8 by removing trees and relandscaping the property breached the right of way agreement. The landscaping plan called for planting approximately 250 green giant arborvitaes, forty-four large linden trees, magnolia trees, and pachysandra ground cover

23

along both sides of the Lot 8 flagstaff. The row of trees extended nearly the full length of 529 Waterfront's properties, blocking access to Lot 6.01, and nearly all access to Lot 6.02. The Gargiulos also installed five-foot-tall fencing, seven-foot-tall deer fencing, a metal entrance gate, brick pillars, and an iron deer grate. The installation of the gate shortened the easement by approximately 150 feet. Notwithstanding these changes, 529 Waterfront still had access to Van Beuren Road from Lot 6.02.

The Gargiulos also asserted claims for slander of title, breach of the access easement, trespass, and nuisance. They sought a declaratory judgment regarding the scope of the right of way.

Each party moved for summary judgment. The trial judge issued an order with a detailed statement of reasons on April 28, 2023, which denied 529 Waterfront summary judgment, dismissed its breach of the right-of-way claim, and partially granted the Gargiulos summary judgment on the declaratory judgment claim.

The judge ruled the purpose of the access easement from Lot 6.01 across Lot 8 was for access to and from Van Beuren Road. However, the easement was abandoned by the 1975 deed. "[T]he alterations . . . the Gargiulos made to the Lot 8 [f]lagstaff [did not] unreasonably interfere with the use and purposes of

the" utilities easement, meant "to allow for use, repair, and maintenance of existing phone and electric lines."  529 Waterfront did not show how the plantings and improvements made by the Gargiulos interfered with their "ability to use the [f]lagstaff [d]riveway as a right of way to Van Beuren Road from Lot 8, nor how [they] . . . interfered with the ability to maintain utilities."  The judge also found there was no prescriptive easement on the utility easement, flagstaff, or the flagstaff driveway because 529 Waterfront admitted they were "invited to us[e] the Lot 8 [f]lagstaff or the [f]lagstaff [d]riveway by the previous owners of Lot 8."  On April 25, 2024, the judge entered a consent order dismissing the remaining claims unresolved by the April 2023 order with prejudice.

A.

On appeal, 529 Waterfront argues the judge's finding the easement was abandoned was erroneous because the Levine deed's discussion of the easement was ambiguous and extrinsic evidence, including the easement's use for farming purposes, shows it was not abandoned.  The restrictions in the Levine deed only applied to the Levines.  529 Waterfront asserts the judge did not explain how the ambiguously worded deed constituted clear and convincing evidence the easement was abandoned.

25

529 Waterfront claims the judge ignored the history of the easement, including the court's findings in the Hawrylo lawsuit that the easement clearly and unambiguously provided the Walkers with access to Jeffers's portion of Lot 6. He also misconstrued other evidence in the record and improperly weighed evidence in deciding the summary judgment motion.

529 Waterfront claims the judge mistakenly found: it made "permissive" uses of the Lot 8 flagstaff, Lot 6.01 was not landlocked, and the sole purpose of the easement was to access Van Beuren Road. As to the last point, 529 Waterfront argues the easement was for all roadway uses and purposes. Therefore, because the easement had a broad purpose, the judge erred when he concluded the Gargiulos did not interfere with 529 Waterfront's easement rights by improving the Lot 8 flagstaff in a manner, which permitted access to Van Beuren Road from Lot 6.02, but did not permit other uses by Lot 6.01. Contrary to the judge's findings, 529 Waterfront claims the Gargiulos illegally interfered with their easement by making improvements to the flagstaff, which narrowed its length from the original metes and bounds of the easement described in the Jeffers deed.

26

## B.

We review the grant of summary judgment de novo, applying "the same standard as the trial court."  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

Easements appurtenant are servitudes "created when the owner of one parcel of property . . . grants rights regarding that property to the owner of an adjacent property."  Rosen v. Keeler, 411 N.J. Super. 439, 450 (App. Div. 2010). "The easement appurtenant 'enhances the value of the dominant estate and cannot exist separate from the land itself.'"  Rosen, 411 N.J. Super. at 450 (quoting Vill. of Ridgewood v. Bolger Found., 104 N.J. 337, 340 (1986)).  When a written instrument creating an easement appurtenant uses "the word 'assign,'" then "the parties intended the benefit to run with the land."  Id. at 451.  A benefit which runs with the land will "survive any subsequent conveyance or devise by the original grantee."  Khalil v. Motwani, 376 N.J. Super. 496, 502 (App. Div. 2005).

An easement appurtenant may be created "by express acts." Kline v. Bernardsville Ass'n, Inc., 267 N.J. Super. 473, 478 (App. Div. 1993). Grantors "may, by covenant in a deed," create an easement to "restrict the use of land conveyed for the benefit of land retained[,] and bind the grantee and [their]successors in title who take with notice." Perelman v. Casiello, 392 N.J. Super. 412, 418 (App. Div. 2007). "No particular words are necessary to constitute the grant of an easement; any words which clearly show the intention to give an easement are sufficient to effect that purpose, provided the language is certain and definite in its terms." Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 333 N.J. Super. 310, 324 (App. Div. 2000).

The written instrument making the conveyance fixes the "extent of the easement" it creates. Eggleston v. Fox, 96 N.J. Super. 142, 147 (App. Div. 1967) (citing Restatement (First) of Prop. § 482 (Am. L. Inst. 1944)). Where "written agreements" have created an easement, principles of contract law guide the court's analysis of the easement's existence and scope. Borough of Princeton, 333 N.J. Super. at 324-25.

The goal of contract interpretation is to determine "the intention of the parties as revealed by the language used by them." Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 527 (App. Div. 2003). Written agreements

A-2009-23

"must be read as a whole without focus on an isolated phrase." AXA Assurance, Inc. v. Chase Manhattan Bank, 339 N.J. Super. 22, 26 (App. Div. 2001). The "words are to be given a 'reasonable meaning rather than an unreasonable one and a court will endeavor to give a construction most equitable to the parties and which will not give one of them an unfair or unreasonable advantage over the other.'" Krosnowski v. Krosnowski, 22 N.J. 376, 387-88 (1956) (quoting 9 Williston on Contracts § 46 (rev. ed. 1945)).

A threshold question is whether the terms of the easement are "susceptible to at least two reasonable alternative interpretations," and thus, ambiguous. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). Courts analyze the issue by considering the grant's language in its "entirety and in the light of the surrounding circumstances." Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 605 (1964).

If the terms are not susceptible to reasonable alternative interpretations, and their "meaning is plain," then those terms "will control without resort to artificial rules of construction." Ibid.; Oldfield v. Stoeco Homes, Inc., 26 N.J. 246, 257 (1958) ("If the four corners of the deed provide a coherent expression of the parties' intent, we need search no further."). Courts do not re-write such

instruments "to afford greater or different rights than those literally and unambiguously expressed." Khalil, 376 N.J. Super. at 506. Indeed,

> where there is an express limitation in the grant or reservation of the use to or purpose for which a way is to be put it will be enforced notwithstanding it becomes necessary or convenient for use for other purposes of the dominant landowner not existing or contemplated when the easement is created.
>
> [Leasehold Ests., Inc. v. Fulbro Holding Co., 47 N.J. Super. 534, 551 (App. Div. 1957) (collecting cases).]

A written instrument may also terminate an easement or abandon it. Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333, 345 (App. Div. 2015) (citing Restatement (Third) of Prop.: Servitudes § 7.1 (Am. L. Inst. 2000)). "[T]here must be two elements present, an act tantamount to an abandonment and an intention to abandon." Freedman v. Lieberman, 2 N.J. Super. 537, 544 (Ch. Div. 1949). "To establish that the owner of an easement has abandoned it[,] there must be clear and convincing proof of either an intention on [their] part to abandon it forever or an a[c]quiescence by [them] in some action taken by the owner of the servient tenement adverse to the easement." Rossi v. Sierchio, 30 N.J. Super. 575, 580 (App. Div. 1954).

Pursuant to these principles, we conclude summary judgment was properly granted to the Gargiulos. The plain language of the Levine deed was

A-2009-23

clear and convincing evidence of both an intent and an action taken to abandon the easement. It stated ingress and egress to Lot 6.01 would come from Lot 6.01's own "strip of land twenty-five . . . feet in width extending northwesterly from Van Beuren Road." The deed expressly stated there would be no remaining easement "over the right of way fifty . . . feet in width more particularly described in the" Jeffers deed. Simply put, no easement remained for Lot 6.01 across the Lot 8 flagstaff, and Lot 6.01 had its own access to Van Beuren Road.

For these reasons, the judge was not required to consider extrinsic evidence, including the easement's history, historical use, and intended purpose. The findings in the Hawrylo litigation were not dispositive because they did not concern Lot 6.01. The Levine deed controlled and unambiguously abandoned the easement. The remaining arguments raised by 529 Waterfront in this vein lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Finally, we reject 529 Waterfront's argument the judge weighed the facts, including: 529 Waterfront made permissive use of the Lot 8 flagstaff, and Lot 6.01 was not landlocked without the easement. His decision centered around the express language of the Levine deed. Our de novo review does not convince

us otherwise. Even so, we review judgments, not opinions. <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001).

Affirmed in A-2009-23 and A-2700-23.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division